## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAREK CHARVAT, Individually and on behalf of all others similarly situated, | ) ) ) | CASE NO. 8:12CV97 |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM AND ORDER |
| FIRST NATIONAL BANK OF WAHOO, | ) ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) (Filing No. 7). Defendant First National Bank of Wahoo ("FNBW") asserts that this Court has no subject matter jurisdiction over Plaintiff Jarek Charvat ("Charvat") because Charvat has suffered no injury in fact and therefore does not have standing to bring this claim. Alternatively, FNBW requests that all further proceedings in this matter be stayed pending the United States Supreme Court's decision in *First American Fin. Corp. v. Edwards*, 610 F.3d 514 (9th Cir. June 21, 2010), *cert. granted,* 131 S. Ct. 3022 (U.S. June 20, 2011) (No. 10-708) (hereinafter referred to as "*First American*"). For the reasons discussed below, all further proceedings in this matter will be stayed pending the Supreme Court's decision in *First American.*

### FACTUAL BACKGROUND

For purposes of the pending Motion, the Court accepts as true all well-pled factual allegations in the Class Action Complaint ("Complaint") (Filing No. 1), although the Court need not accept Charvat's legal conclusions. The following is a summary of the allegations in the Complaint.

Charvat made two separate electronic fund transfers ("EFTs") from FNBW's automated teller machine ("ATM") located at 354 North Chestnut Street, Wahoo, Nebraska, on or about January 22, 2012, and March 4, 2012. FNBW charged Charvat a fee of $2.00 in connection with each transaction.  At the time of the EFTs, there was no notice posted "on or at" the ATM apprising consumers that a fee would be charged for the use of the ATM. Charvat does not allege that he received no on-screen notice that a fee would be charged.  On March 8, 2012, Charvat brought this class action against FNBW alleging violations of the Electronic Fund Transfer Act ("EFTA") 15 U.S.C. § 1693-1693r and its implementing regulations 12 C.F.R. § 205.1-205.20.  Charvat seeks statutory damages for himself and the members of the class and an award of costs and attorney fees.

The purpose of the EFTA is to define individual consumer rights.  15 U.S.C. § 1693(b).  The EFTA requires any ATM operator who imposes fees on consumers in connection with EFTs to provide notice of the fact that a fee is being imposed and the amount of the fee.  15 U.S.C. § 1693b(d)(3)(A).  The required notice must be posted in two places, both "on or at" the ATM, and on the screen of the ATM or, alternatively, on a paper notice issued before the transaction is completed.  15 U.S.C. § 1693b(d)(3)(B).  An ATM operator is prohibited from imposing a fee on a consumer unless the EFTA's notice requirements are followed.  15 U.S.C. § 1693b(d)(3)(C).  FNBW violated the notice requirements of the EFTA, and was thus prohibited from imposing any fee on Charvat or the Class.

### STANDARD OF REVIEW

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges whether the Court has subject matter jurisdiction to hear the case.  The party asserting jurisdiction

bears the burden of proving that jurisdiction is proper. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010). The Court, however, has "'wide discretion'" to decide the process with which its jurisdiction can best be determined. *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). It "has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Id.* at 962 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *see also Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008) (stating that "[m]otions to dismiss for lack of subject-matter jurisdiction can be decided in three ways: at the pleading stage, like a Rule12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts"). According to Federal Rule of Civil Procedure 12(h)(3), a federal court must dismiss an action if it determines at any time it lacks subject matter jurisdiction. *Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 637 n.4 (8th Cir. 2003).

## DISCUSSION

**I.      Charvat did not allege an injury in fact to satisfy the constitutional minimum requirement of standing.**

Three requirements constitute the "irreducible constitutional minimum" of standing, the first of which is "an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). The requirement of injury in fact is a "hard floor of Article III jurisdiction that cannot be removed by statute." *Summers*

*v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).  This injury "may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'  Of course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself."  *Warth v. Seldin*, 422 U.S. 490, 500-01 (1975) (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 617 n.3 (1973)).  "It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."  *Raines v. Byrd,* 521 U.S. 811, 820 n.3 (1997).  It is undisputed that Congress can create a legal right sufficient for standing under the EFTA, but Plaintiff must still allege a "distinct and palpable injury to himself."  *Warth,* 422 U.S. at 501.  The issue then is whether FNBW's failure to give a notice to which Charvat was statutorily entitled in itself constitutes an injury in fact to Charvat.  This Court concludes it does not.

Three district courts have held that when an ATM operator fails to provide a fee notice on the exterior of the ATM as required by the EFTA, the statutory violation is  in itself an injury–regardless of whether the plaintiff had actual knowledge of the fee through the on-screen notice and affirmatively accepted it.  *Campbell v. Hope Cmty. Credit Union*, No. 10-2649-STA, 2012 WL 423432, at *2 (W.D. Tenn. Feb. 8, 2012); *Kinder v. Dearborn Fed. Sav. Bank*, No. 10-12570, 2011 WL 6371184, at **4-5 (E.D. Mich. Dec. 20, 2011); *In re Regions Bank ATM Fee Notice Litig.,* Nos. 2:11-MD-1000, 1001, 1002, & 2202-KS-MTP, 2011 WL 4036691, at *3 (S.D. Miss. Sept. 12, 2011).  The *Campbell* and *In re Regions Bank* courts both noted that the EFTA is a remedial consumer statute which should be construed broadly in favor of the consumer.  *Campbell,* 2012 WL 423432, at *2; *In re Regions Bank*, 2011 WL 4036691, at *3.  These two courts then stated that the EFTA

provides for the recovery of actual and statutory damages, indicating Congress's intent for private causes of action despite minimal or no actual damage. *Campbell*, 2012 WL 423432, at *2; *In re Regions Bank*, 2011 WL 4036691, at *3. In *Kinder,* the court considered the argument that the plaintiff did not suffer an injury because he had actual knowledge. *Kinder*, 2011 WL 6371184, at *2. The *Kinder* court noted that "[a]lthough this argument has some appeal, it has been rejected by at least one court." *Id.* The court then relied on the reasoning of *In re Regions Bank* and granted standing. *Id*.

These three district court opinions did not address the "hard floor" constitutional requirement of injury in *fact*. The Constitution requires more than mere injury in *law*. A plaintiff must allege an injury in *fact* that was caused by the lack of an exterior fee notice on the ATM. This Court agrees that the EFTA should be construed broadly in favor of the consumer, but the provision for actual and statutory damages in the EFTA does not automatically mean that a litigant is entitled to damages when he has alleged no injury in fact. The authorization of statutory damages is unrelated to *injury*. "An interest unrelated to injury in fact is insufficient to give a plaintiff standing." *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000). Here, Charvat alleges only a statutory violation of the EFTA because FNBW failed to provide an exterior fee notice on its ATM. Charvat has not alleged an injury in fact caused by FNBW's violation of the notice requirements, and he will not be accorded standing.

Charvat cites *White v. Arlen Realty & Dev. Corp.*, 540 F.2d 645 (4th Cir. 1975), in support of his position that a statutory violation of the EFTA is in itself an injury creating standing. In *White*, a credit provider violated the disclosure requirements of the Truth in

Lending Act ("TILA"), 15 U.S.C. §1637(b)(2), by failing to give a brief identification of the charges on the plaintiff's charge card statement.  *Id.* at 647-48.  The court held that even though the plaintiff had actual knowledge of the purchases he had made on his card, he had a "right to specific information"– a description of his purchases on the charge card statement.  *Id.* at 649-50.  Charvat cites this case as rejecting the proposition that "a consumer who already knows of the information not provided by the defendant cannot claim to be injured." (Filing No. 11, at 5.)  In *White*, however, it was not the plaintiff's actual knowledge of his purchases that was at issue.  The plaintiff suffered injury in fact, although he had actual knowledge of the purchases he had made on his charge card, because he did not know what the creditor *claimed* to be his purchases. The *White* case demonstrates the constitutional requirement that an injury in fact, which may be caused by a statutory violation, must be *alleged*.  Here, Charvat has not alleged an injury in fact caused by FNBW's failure to provide notice of the fee on the exterior of its ATM.

Charvat also cites cases where "testers" have been granted standing to bring suit under statutorily created rights to certain information, despite not relying on the information or being misled by false information.  Charvat first cites *Village of Bellwood v. Dwivedi*, 895 F.2d 1521 (7th Cir. 1990), wherein the court held that "testers" paid to determine housing discrimination had standing even though they had no actual intent to purchase property and were not misled by the false information provided by realty companies, as Congress had created a statutory right for purchasers to be free from such misrepresentations.  *Id.* at 1526-27 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982)).  Charvat then points to "testers" who have been held to have standing to sue for non-compliant

transportation facilities under the American with Disabilities Act, even though they have no intention of using public transportation themselves. *Tandy v. City of Wichita*, 380 F.3d 1277, 1285-88 (10th Cir. 2004). Finally, Charvat points to employment "testers" that have been held to have standing to enforce non-discrimination statutes, because Congress has mandated that every individual receive equal employment *opportunity*, even though the "testers" had no intention of taking the jobs for which they applied. *Kyles v. J.K. Guardian Sec. Servs., Inc.,* 222 F.3d 289, 298-300 (7th Cir. 2000). It is true that like Charvat, the "tester" plaintiffs did not rely on the information they received and did not personally allege an injury that operated to their detriment. The information presented to the "testers," however, was deficient in that it was false, misleading, or delayed. Charvat does not allege that FNBW's failure to provide a fee notice "on or at" the ATM was in any way false or misleading. The fee information was available to him through the on-screen notice. The cases that Charvat cites do not change the fact that he must allege an *injury in fact* caused by FNBW's failure to comply with the EFTA notice requirements.

Charvat suggests that if this Court determines that a statutory violation of the notice requirements of the EFTA is not in itself an injury, the Court would be stripping the statute of a requirement purposefully imposed by Congress. He notes that Congress may have discerned that one notification was not enough, or that unscrupulous ATM operators should be prevented from luring consumers under the false presumption that no transaction fee would be incurred. This Court does not question Congress's purpose for imposing the notice requirements. Instead, this Court is respectful of the constitutional minimum requirement of standing that a plaintiff must have to proceed in an action before the Court. This limitation on judicial power "is no mere formality: it 'defines with respect to

the Judicial Branch the idea of separation of powers on which the federal government is founded.'" *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012) (quoting *Allen v. Wright,* 468 U.S. 737, 750 (1983)).

II.     **The federal government did not assign its "federal interests" to private actors to enforce the notice requirements of the EFTA.**

In an attempt to circumvent Article III's standing requirement, Charvat alleges that the federal government assigned its "federal interests" to private actors to enforce the notice requirements of the EFTA.  This argument is rejected for two reasons.  First, the EFTA is not a *qui tam* statute that clearly assigns the federal government's standing to private actors; and second, the purpose of the EFTA is to protect consumer interests and not federal interests, thus there are no "federal interests" to assign.

Charvat develops his "assigned standing" argument by relying on *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000), wherein the court held that a *qui tam* plaintiff who had suffered no injury had standing to bring suit on behalf of the United States because he was a partial assignee of the United States' interests under the False Claims Act ("FCA"). *Id.* at 773.  The FCA is a *qui tam* statute, meaning that it allows an injury to the federal government–in this case fraud committed against the federal government–to confer standing upon a private actor so that he may enforce the federal government's interests.  *Id.* at 768-69.  Unlike the FCA, the EFTA is not a *qui tam* statute.  The few *qui tam* statutes still in effect today make it clear within the statute that an individual may sue on the federal government's behalf.  *Id.* at 802 n.1. There is no language in the EFTA suggesting that a private actor may sue on the federal government's behalf.  Although Charvat cites the provision for damages in the EFTA statute as evidence

8

of Congress's intent to encourage private actors to bring suit to enforce the statute, the authorization of damages does not make the EFTA a *qui tam* statute.  *Vermont Agency* takes care to note that an interest unrelated to injury in fact, like the bounty a *qui tam* plaintiff would recover by statute after a successful suit (or the statutory damages Charvat would receive), is not enough to create standing.  *Id.* at 772.  Instead, a *qui tam* plaintiff has standing because the federal government assigned its claims to private actors.  *Id.* at 773.  Moreover, the purpose of the EFTA is not to protect "federal interests" but rather to protect consumer interests. 15 U.S.C. § 1693(b).  The EFTA provides that a person is liable under 15 U.S.C. § 1693m(a) for failing to comply with any provision of the Act "with respect to any consumer."  Because the federal government has no federal interests in the EFTA to assign to private actors, the federal government could not have assigned its standing.

Charvat's allegations suggest his interest appears to be solely in the enforcement of the EFTA statute.  Unless Charvat alleges an injury in fact, he does not have *standing* to enforce the statute.  Where the government has not assigned its claims to private citizens, only the United States Attorney General may sue to redress the injury to the Government.  *City of Kansas City v. Yarco Co., Inc.*, 625 F.3d 1038, 1041 (8th Cir. 2010).  Therefore, FNBW is entitled to dismissal of this action because Charvat has not alleged an injury in fact.

III.    **The standing issue before the Supreme Court in *First American* has bearing on the standing issue presented here.**

The issue before the Supreme Court in *First Am. Fin. Corp. v. Edwards*, 610 F.3d 514 (9th Cir. June 21, 2010), *cert. granted,* 131 S. Ct. 3022 (U.S. June 20, 2011) (No. 10-

708) is similar to the standing issue presented here, and the Supreme Court's decision will be relevant to this motion.  It is possible that the pending decision of the Supreme Court in *First American* may alter this Court's understanding of the constitutional minimum requirement of standing.  Therefore, it is in the best interest of Charvat that all further proceedings in this matter to be stayed pending the Supreme Court's decision.

In *First American,* plaintiff/respondent Edwards sued defendant/petitioner First American Financial Corporation, a title insurance underwriter, for failing to disclose a "kickback" to a title agency in which First American had an ownership interest.  Edwards's claim is that she was injured because First American's ownership interest violated the mandatory disclosure requirements of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a).  *First Am. Fin. Corp.*, 610 F.3d at 515, 517.  Edwards had no complaint about the price or quality of the title insurance she received and alleged no other harm than a statutory violation of RESPA.  Petition for Writ of Certiorari, *First Am. Fin. Corp. V. Edwards*, 2010 WL 4876485, at *1 (No. 10-708).

First American argues that Edwards did not suffer an injury in fact because Edwards would have been charged the same fee for title insurance by any provider and she made no claim that any alleged violation of RESPA operated to her detriment.  *Id*. at *8.  The fees for title insurance in Ohio are set by state law, so disclosing the affiliation to the title agency would not have changed the fee Edwards was charged.  *Id.* at **5-6.  First American raised the question of "whether a plaintiff can establish standing to sue under RESPA merely by alleging a statutory violation, without any claim that the violation affected the settlement

services rendered." *Id.* at \*11.  The Supreme Court granted certiorari to hear the following question presented:

> Does such a purchaser have standing to sue under Article III, § 2 of the United States Constitution, which provides that the federal judicial power is limited to "Cases" and "Controversies" and which this Court has interpreted to require the plaintiff to "have suffered an 'injury in fact,'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)?

*Id*. at \*i; *First. Am. Fin. Corp.*, 131 S. Ct. at 3022 (granting petition for writ of certiorari to the above question).

Charvat contends *First American* has no bearing on the standing issue here because there is not a competitive market in Ohio for title insurance fees and the disclosure of the ownership interest in the title agency would not have affected the fee.  In this case, unlike *First American*, a competitive market exists for ATM fees. Charvat believes the presence of a competitive market distinguishes the standing question here because the EFTA mandates the fee notice requirements so that consumers can make an informed choice of whether to make an EFT.

The presence of a competitive market does not change the relevance of the question presented in *First American* and its applicability to the standing issue here.  In both *First American* and here, the question remains whether a violation of a statute, without an alleged injury in fact, is in itself sufficient to create standing under Article III.  For this reason, and because it is in Charvat's interest that his action not be dismissed by this Court for lack of subject matter jurisdiction pending the Supreme Court's decision in *First American*, this Court will grant FNBW's request to stay the proceedings in this matter pending the Supreme Court's decision.

IT IS ORDERED:

1.      All further proceedings in this matter are stayed pending the Supreme

        Court's decision in *First American Financial Corp. v. Edwards*, No. 10-708

        (cert. granted, June 20, 2011); and

2.      When the Supreme Court's decision is filed, the Defendant must notify the

        Court of the decision by filing a notice with the Court within seven days of the

        date of the decision.

DATED this 4th day of June, 2012.

                                BY THE COURT:


                                s/Laurie Smith Camp
                                Chief United States District Judge